OPINION
{¶ 1} Wylie M. Andrews is appealing the judgment of the Montgomery County Court of Common Pleas convicting him of two counts of robbery in violation of R.C. 2911.02(A)(3) and sentencing him accordingly.
 {¶ 2} On the night of January 21, 2002, Jesse Chen, James Garrison and Benjamin Walton were working at the Donut Palace in Harrison Township, Ohio. Between the hours of 10:00 p.m. and 11:00 p.m. the store was empty, except for the three employees who were in the back room preparing donut orders for delivery. Suddenly, the three employees heard the lottery ticket dispenser squeak in the general store area. They were surprised to hear this because the bells attached to the front door had not alerted them that someone had entered the store.
 {¶ 3} Garrison walked to the doughnut case in the front of the store and asked the customer if he needed help. Garrison recognized Andrews, who was bent over his shoe placing a quantity of lottery tickets up his pant leg or down his sock. Garrison requested that Andrews return the tickets; Andrews denied the theft.
 {¶ 4} Garrison asked Walton to check the lottery ticket dispenser to see if any tickets were missing. Because the third shift employees do not sell lottery tickets, ticket sales are logged daily at 9:00 p.m. Walton checked the log and discovered that twenty tickets were missing.
 {¶ 5} Walton stated to Andrews, "Look, we can solve this real quick. Let me just call the cops. We'll let them — police settle this right now rather than have, you know, an argument[.]" Andrews, who had been acting nervous, immediately turned and ran from the store. Garrison and Chen chased Andrews. According to Garrison and Chen, Garrison grabbed a long metal bucket opener from the back of the store after Andrews sprinted from the store. In contrast to their testimony, Andrews claimed that Garrison had proceeded to the back of the store while he and Walton had been arguing and had returned with a long metal object. Andrews explained that he had retreated from the store because he had felt "defenseless."
 {¶ 6} Andrews ran from the Donut Palace's parking lot, past a car wash and a Long John Silver's, through a short field and into a Kwik N Kold parking lot. Garrison spied Andrews hiding behind a dumpster in the parking lot and approached the area. Garrison and Chen testified that Andrews had jumped from behind the dumpster with his left hand behind his back and had warned them to move back from him or he would "put a hot one" in them. Both Garrison and Chen testified that they had believed that Andrews had a gun, so they had backed away from Andrews. After vocalizing more threats such as "I'll use it," Andrews again took off running, removing his hand from his back. Garrison and Chen realized Andrews did not have a gun and again pursued him. They followed Andrews to an apartment building where Chen narrowed the distance between himself and Andrews just before Andrews entered the building. Chen reached the building as Andrews entered the first set of doors. Chen grabbed the door so that Andrews could not pull it shut; however, Andrews opened the door and kicked Chen in the chest, sending him backwards against the railing.
 {¶ 7} Garrison stated that, as he had approached the building, he had watched Chen and Andrews reach the building and he had noticed Chen struggle with the door. As Garrison got closer, he saw Chen fall backwards.
 {¶ 8} Chen recovered and entered the building, but not before Andrews had hit a button, and the second set of doors unlocked. Chen was not able to enter the second set of locked doors, but he watched through the glass window as Andrews ascended to the second floor and entered one of the apartments.
 {¶ 9} Andrews denied acting as if he had a gun, although he admitted to placing his left hand in his back pants pocket. He also denied kicking Chen in the chest, stating that neither Chen nor Garrison came in close proximity to him.
 {¶ 10} Officers responded to the scene and located Andrews in a closet in the second floor apartment that Chen had seen him enter. They discovered nineteen lottery tickets under the mattress in that apartment.
 {¶ 11} Andrews was placed under arrest and charged with two counts of robbery in violation of R.C. 2911.02(A)(3). Following a bench trial, Andrews was convicted of both counts and sentenced to three years incarceration on each count, to be served concurrently. Andrews now appeals his convictions and sentence, asserting two assignments of error.
 {¶ 12} Andrews' first assignment of error:
 {¶ 13} "Appellant's conviction is against the manifest weight of the evidence."
 {¶ 14} Preliminarily, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Martin, supra, at 175.
 {¶ 15} An appellate court will defer to the trier of fact on determinations of witness credibility. State v. DeHass (1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. After careful examination of the record, we cannot say that the judgment of the trial court was against the manifest weight of the evidence. In this case, Andrews was convicted of robbery in violation of R.C. 2911.02(A)(3). That statute states, in pertinent part:
 {¶ 16} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 17} "* * *,
 {¶ 18} "(3) Use or threaten the immediate use of force against another."
 {¶ 19} Force is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A).
 {¶ 20} Andrews asserts that his robbery convictions were against the manifest weight of the evidence because there was no evidence of him "fleeing immediately" after the theft offense and there was no evidence of the use of or threatened use of force.
 {¶ 21} There is no dispute that Andrews stole the lottery tickets. Andrews asserts that, after he had stolen the tickets, Garrison had proceeded to the back of the store and had picked up a long metal tool. Feeling "defenseless," Andrews fled the store. However, at the trial in this matter, Chen, Garrison and Walton testified that Andrews had fled the store when Walton had reached for the phone to call the police to settle the matter. None of the employees mentioned that Garrison had obtained the metal tool at this point. In fact, Garrison and Chen testified that the tool was not obtained until Andrews exited the store with the tickets.
 {¶ 22} The second contention Andrews makes is that he did not use or threaten the use of force. Again, Andrews fled the store and was pursued by Garrison and Chen. Garrison and Chen both testified that Andrews, upon emerging from behind a dumpster behind the Kwik N Kold, had shouted to them that they had better back away from him or he would "put a hot one in [them]." Andrews continued to mumble threats about "I ain't playing" and "I'll use it" to the men. Importantly, Garrison and Chen noted that Andrews had made the statements with his left hand behind his back, as if concealing a weapon. Andrews admits to having placed his left hand behind his back but argues that he did not do so to pretend that he had a gun. Garrison and Chen testified at trial that they had believed Andrews had a gun on his person.
 {¶ 23} Additionally, once Andrews reached the apartment building, Chen struggled with Andrews to gain entrance into the building. Chen testified that Andrews had kicked him in the chest in an effort to prevent him from accessing the apartment building. This is corroborated by Garrison's testimony that, as he had approached the apartment building, he had noticed Chen falling backward from the door.
 {¶ 24} Andrews presented his own testimony, which was favorable to him. Andrews stated that he had never had a gun, had never threatened to have a gun, and had left the store only after Garrison had emerged from the back room with a long metal tool. Andrews explained that he had been defenseless and that that had been the reason he had fled the store. He denied threatening the men upon emerging from behind the dumpster. Instead, he explained that he had looked up from behind the dumpster and had been confronted by Garrison, who had raised the long metal tool above his head as if to strike. He denied having made any threats. He also denied having kicked Chen in the chest and stated that neither of the men had been close enough to him prior to his entering the apartment building for him to have made any contact with them.
 {¶ 25} While Andrews argues that he did not flee as a result of committing the theft offense, but instead to defend himself, and that he did not use or threaten the use of force, the resolution of the inconsistencies at trial falls properly within the fact finder's province. At trial, the trial court was able to hear all of the witnesses and view their demeanor. Substantial credible, competent evidence existed to support the trial court's verdict. Our review of the record does not identify inconsistencies of such significance that would prevent reasonable minds from finding the elements of robbery proved beyond a reasonable doubt. The trial court's conclusion regarding the flight and the use or threatened use of force was not contrary to the manifest weight of the evidence. Based on the foregoing, we find that the trial court, which was in the best position to assess Andrews' credibility, did not lose its way in finding that he had fled after committing a theft offense and that during his flight he had made a threat of immediate force against Chen and Garrison and had used force against Chen.
 {¶ 26} We overrule Andrews' first assignment of error.
 {¶ 27} Andrews' second assignment of error:
 {¶ 28} "The court erred in imposing an excessive sentence that is not supported by the record or the manifest weight of the evidence."
 {¶ 29} In this assignment of error, Andrews asserts that the trial court abused its discretion in imposing consecutive sentences upon him for the two robbery convictions in this case. Andrews contends that consecutive sentences are disproportionate to the crimes at issue.
 {¶ 30} We believe that Andrews is mistaken in his beliefs regarding his sentence. In the termination entry dated July 3, 2002, the trial court noted that Andrews was to be "confined for a term of THREE (3) years on each count to be served CONCURRENT with each other[.]" (Doc. No. 28.)
 {¶ 31} Accordingly, we find no merit in Andrews' assertions, as the sentences were not imposed consecutively. This assignment of error is overruled.
 {¶ 32} The judgment of the trial court is affirmed.
BROGAN and WOLFF, JJ., concur.